**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| MITCHELL MCCORMICK, et al., Plaintiffs, vs. HALLIBURTON COMPANY and HALLIBURTON ENERGY SERVICES, INC., Defendants. | ) | Case No. CIV-11-1272-M |
| KRAIG BICKERSTAFF and ANITA BICKERSTAFF, Plaintiffs, vs. HALLIBURTON ENERGY SERVICES, INC., Defendant. | ) | Case No. CIV-11-1305-M |
| KENYA SMITH and EVAN JOSLIN, Plaintiffs, vs. HALLIBURTON ENERGY SERVICES, INC., Defendant. | ) | Case No. CIV-11-1307-M |

| | | |
|---|---|---|
| STEPHEN G. JONES and<br>CYNTHIA L. JONES,<br><br>Plaintiffs,<br><br>vs.<br><br>HALLIBURTON ENERGY<br>SERVICES, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CIV-11-1322-M |

| | | |
|---|---|---|
| AMANDA ALEXANDER, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>HALLIBURTON COMPANY,<br>HALLIBURTON ENERGY<br>SERVICES, INC., and SAIC ENERGY,<br>ENVIRONMENT & INFRASTRUCTURE,<br>LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CIV-11-1343-M |

**ORDER**

Defendants in the above-referenced cases have filed motions for judgment on the pleadings as to plaintiffs' request for medical monitoring relief. This matter has been fully briefed. Based upon the parties' submissions, the Court makes its determination.

I. Background

Plaintiffs in the above-referenced cases have sued defendants based upon their operations at a facility on Osage Road in Duncan, Oklahoma (the "Site"). The Site was used to conduct various research and development activities, including cleaning U.S. Department of Defense missile motor casings and recycling stainless steel fuel rod racks from a Nebraska nuclear power plant. The

primary hazardous waste that was disposed of at the Site was ammonium perchlorate. The existence of perchlorate has been found in the groundwater at and around the Site.

Plaintiffs filed the above-referenced actions, alleging contamination of the groundwater at and around the Site. As part of the relief requested, plaintiffs seek medical monitoring for those plaintiffs who have been exposed to hazardous waste but who have not yet suffered personal injury from such exposure. Defendants assert that there is no medical monitoring remedy available under Oklahoma law and move for judgment on the pleadings as to plaintiffs' requests for a medical monitoring remedy for any plaintiffs other than those who claim to be presently injured.

## II. Discussion

### A. Whether a motion for judgment on the pleadings is proper in these cases

Defendants move pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings as to plaintiffs' requests for medical monitoring relief. Plaintiffs assert that it is not proper for this Court to consider the sufficiency of the relief requested through a motion for judgment on the pleadings. Specifically, plaintiffs contend that only claims/causes of action are subject to a motion for judgment on the pleadings, not a remedy.

Through their motions, defendants are not asserting that plaintiffs' requests for medical monitoring relief are not supported by the allegations in the complaints but are asserting that such remedies are unavailable as a matter of Oklahoma law. Courts in the Tenth Circuit, including this Court, have routinely dismissed requests for relief when such remedies are not allowed as a matter of law. *See, e.g.*, *McGivern, Gilliard & Curthoys v. Chartis Claims, Inc.*, No. 12-CV-0200-CVE-TLW, 2012 WL 2917336, at *2-3 (N.D. Okla. July 17, 2012) (dismissing plaintiff's punitive damages request under Rule 12(b)(6)); *Roberts v. Target Corp.*, No. CIV-11-951-HE, 2012 WL

2357420, at *3 (W.D. Okla. June 20, 2012) (dismissing plaintiff's request for injunctive relief under Rule 12(c)); *London v. Hill*, No. 11-CV-028-GKF-FHM, 2012 WL 529934, at *5 & n.1 (N.D. Okla. Feb. 17, 2012) (dismissing plaintiff's exemplary damages request under Rule 12(b)(6) where such relief was barred by law); *Shiel v. City of Edmond*, No. CIV-11-802-M, 2011 WL 4708067, at *1 (W.D. Okla. Oct. 4, 2011) (dismissing plaintiff's request for punitive damages under Rule 12(b)(6) where they were not recoverable as a matter of law); *Morrison v. Anadarko Petroleum Corp.*, No. CIV-10-135-M, 2010 WL 2721397, at *4-5 (W.D. Okla. July 6, 2010) (dismissing under Rule 12(b)(6) plaintiff's request for injunctive relief). Because defendants are seeking judgment on the pleadings based upon their contention that medical monitoring relief is not available as a matter of Oklahoma law, the Court finds that defendants' motions for judgment on the pleadings are proper in these cases.

B. Standard of review

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). When reviewing a motion for judgment on the pleadings, a court applies the same standard of review applicable to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Regarding the standard for determining whether to dismiss a claim pursuant to Rule 12(b)(6), the United States Supreme Court has held:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that

> are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

Additionally,

> [a] federal court sitting in diversity must apply the law of the forum state, in this case Oklahoma, and thus must ascertain and apply Oklahoma law with the objective that the result obtained in the federal court should be the result that would be reached in an Oklahoma court. If a federal court cannot ascertain the law of the forum state, [the court] must in essence sit as a state court and predict how the highest state court would rule.

*Wood v. Eli Lilly & Co.*, 38 F.3d 510, 512 (10th Cir. 1994) (internal citations omitted). Further, a federal court is generally reticent to expand state law without clear guidance from its highest court. *See Taylor v. Phelan*, 9 F.3d 882, 887 (10th Cir. 1993).

C. Whether this issue should be certified to the Oklahoma Supreme Court

Certain plaintiffs have contended that if this Court determines Oklahoma law to be unclear on this issue, the proper course of action is to certify the question to the Oklahoma Supreme Court. The Tenth Circuit has stated:

> Under our own federal jurisprudence, we will not trouble our sister state courts every time an arguable unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves. While we apply judgment and restraint before certifying, however, we will nonetheless employ the device in circumstances where the question before us (1) may be determinative of the case at hand and (2) is sufficiently novel that we feel uncomfortable attempting to decide it without further guidance. In making the assessment whether to certify, we also seek to give meaning and respect to the federal character of our judicial system, recognizing that the judicial policy of a state should be decided when possible by state, not federal, courts.

*Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007) (internal citations omitted).

Having carefully reviewed the parties' submissions, the Court finds that even though neither the Oklahoma Supreme Court nor any other Oklahoma state court has addressed this issue, certification is neither necessary nor appropriate in this case. As set forth below, the Court finds that it is able to predict how the Oklahoma Supreme Court would rule on this issue. The Court further finds that this issue is not sufficiently novel that this Court feels uncomfortable in attempting to decide it without further guidance. Accordingly, the Court finds that this issue should not be certified to the Oklahoma Supreme Court.

D. Whether a medical monitoring remedy is available under Oklahoma law

The issue of whether a plaintiff who is not presently injured is entitled to a medical monitoring remedy has never been addressed by any Oklahoma state court.[1] In their responses, plaintiffs assert that various sources of Oklahoma law support a finding that a medical monitoring remedy is available under Oklahoma law. Specifically, plaintiffs cite to various provisions of the Oklahoma Constitution and various statutes which they contend support such a finding.

First, plaintiffs cite to Article 2, § 6 of the Oklahoma Constitution.[2] Plaintiffs contend that this constitutional provision does nothing less than guarantee for every Oklahoma tort-victim that "a . . . certain remedy" is embedded in Oklahoma's organic law. Further, plaintiffs contend that the

---

[1]The United States District Court for the Northern District of Oklahoma did address this issue in *Cole v. ASARCO Inc.*, 256 F.R.D. 690 (N.D. Okla. 2009) and found that a medical monitoring remedy is not supported by Oklahoma law. The Court, however, will not give this opinion much weight as its analysis is brief, the Oklahoma Supreme Court opinion cited does not stand for the position for which it is cited, and the Tenth Circuit cases cited all interpret Colorado law, not Oklahoma law.

[2]"The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice." Okla. Const. Art. II, § 6.

Oklahoma Constitution does not limit "certainty" of a judicial remedy to "physical injury" or even "physical harm;" a remedy is promised for every "wrong" done to a citizen of Oklahoma and to every person "wronged" while present in Oklahoma. Plaintiffs also contend that individuals who have ingested defendants' contaminants from their water supply will be forced to reach into their pockets and pay for a physician and laboratory tests from time to time and that this "pocketbook" injury constitutes an injury to the "property" of each such victim. Plaintiffs further contend that Article 2, § 6 makes it clear that the framers of Oklahoma's Constitution mandated the courts of Oklahoma to provide a speedy and certain remedy for every injury to property.

The Oklahoma Supreme Court has spoken regarding the nature and breadth of Article 2, § 6 of the Oklahoma Constitution. Specifically, the Oklahoma Supreme Court has held that this "constitutional guarantee mandates that the courts should be open and afford a remedy for those wrongs that are recognized by the law of the land." *Rivas v. Parkland Manor*, 12 P.3d 452, 457-58 (Okla. 2000). Further, the Oklahoma Supreme Court "has already determined Art. 2, § 6 was not intended to preserve a particular remedy for given causes of action in any certain court of the state, nor was it intended to deprive the Legislature of the power to abolish remedies for future accruing causes of action . . ., or to create new remedies for other wrongs as in its wisdom it might determine." *Id.* at 458 (internal quotations and citation omitted). Article 2, § 6 "does not constrain the legislature, but rather compels the judiciary to be open to all persons with actionable causes." *Id.* The Oklahoma Supreme Court has also found:

> Section 6 is intended to guarantee that the judiciary would be open and available for the resolution of disputes, but not to guarantee that any particular set of events would result in court-awarded relief. Section 6 is most often used to insure equal access to court, regardless of status.

*City of Anadarko v. Fraternal Order of Police, Lodge 118*, 934 P.2d 328, 330 (Okla. 1997).

Based upon the Oklahoma Supreme Court's prior holdings regarding the nature and scope of Article 2, § 6, the Court finds that this constitutional provision provides no support for a finding that a medical monitoring remedy is available under Oklahoma law.

Second, plaintiffs contend the organic law of Oklahoma recognizes and protects "inherent rights" of individuals, citing Article 2, § 2 of the Oklahoma Constitution.[3] Plaintiffs assert that "the pursuit of happiness" is impaired if one lives under the cloud of concern that he or she may have a disease or disorder. Plaintiffs also assert that if one is forced to spend one's earnings on medical testing to detect and formulate a treatment plan for a serious medical condition, the involuntary payor has been deprived of a portion of "the enjoyment of the gains of [his] own industry." Plaintiffs further assert that Oklahoma has made the inherent right to life, liberty, the pursuit of happiness, and the enjoyment of the gains of their own industry enforceable in Oklahoma's courts of justice and expressly deemed them to be a citizen's "right."

The Oklahoma Supreme Court has spoken regarding the nature and breadth of Article 2, § 2 of the Oklahoma Constitution. Specifically, the Oklahoma Supreme Court has held that "the same due process protections guaranteed by the 14th amendment [to the United States Constitution] are also guaranteed by Art. 2, § 2." *E. Okla. Bldg & Constr. Trades Council v. Pitts*, 82 P.3d 1008, 1012 (Okla. 2003). Additionally, it appears that Article 2, § 2 only applies to governmental intrusions and not intrusions by private individuals or corporations. *See Gilmore v. Enogex, Inc.*, 878 P.2d 360, 365 (Okla. 1994). Accordingly, the Court finds that the general pronouncement

---

[3]"All persons have the inherent right to life, liberty, the pursuit of happiness, and the enjoyment of the gains of their own industry." Okla. Const. Art. II, § 2.

guaranteeing the same due process protections guaranteed by the 14th Amendment to the United States Constitution set forth in Article 2, § 2 provides no support for a finding that a medical monitoring remedy is available under Oklahoma law. Further, even if Article 2, § 2 did provide a basis in Oklahoma law for a medical monitoring remedy, the Court finds that a medical monitoring remedy based upon Article 2, § 2 would only apply to governmental intrusions.

Plaintiffs also cite to a number of statutory provisions. First, plaintiffs rely upon Okla. Stat. tit. 23, §§ 3, 4, 5, 61. These statutes generally describe the measure of tort recovery under Oklahoma law. The Oklahoma Supreme Court has explained that these statutes are merely declaratory of the common law. *See WRG Constr. Co. v. Hoebel*, 600 P.2d 334, 336 (Okla. 1979) ("23 O.S. 1971 § 3 defines 'damages' in the common-law sense"); *Shawnee Gas & Elec. Co. v. Motesenbocker*, 138 P. 790, 792 (Okla. 1918); *Muskogee Elec. Traction Co. v. Reed*, 130 P. 157, 159 (Okla. 1913) (finding that Okla. Stat. 23, § 5 is "substantially declaratory of the common law."). Further, courts have noted that a plaintiff's available damages in tort "are limited by 23 O.S. 2001 § 61 . . . which is the codification of our common law." *Commercial Fin. Servs., Inc. v. J.P. Morgan Secs., Inc.*, 152 P.3d 897, 900 (Okla. Civ. App. 2006). Since medical monitoring has not been recognized as a remedy under Oklahoma common law, the Court finds that plaintiffs cannot rely upon these statutes in support of a finding that a medical monitoring remedy is available under Oklahoma law.

Plaintiffs further rely upon Okla. Stat. tit. 76, § 1. Section 1 provides: "Every person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his rights." This statutory provision generally defines torts in Oklahoma and does so in a very broad and general manner. The Court finds that it would be inappropriate to rely upon

such a broad general statute to create the specific medical monitoring remedy sought in the cases at bar.

Additionally, plaintiffs make the general argument that they have suffered an injury to their property as a result of the monetary losses they will suffer based upon their need to monitor closely their health and medical condition as a result of their exposure to the contaminated groundwater and, thus, may seek medical monitoring as a remedy. Plaintiffs' argument, however, blurs the distinction between "injury" and "damages." While the economic losses upon which plaintiffs rely would satisfy the "damages" element of a traditional tort claim, these economic losses are wholly derivative of a possible, future injury rather than an actual, present injury. Plaintiffs' asserted monetary losses are simply damages and not an injury to their property.

Accordingly, the Court finds that the various sources of Oklahoma law relied upon by plaintiffs do not support a finding that a medical monitoring remedy is available under Oklahoma law.

Finally, plaintiffs contend that based upon the public policy of Oklahoma, the Oklahoma Supreme Court would recognize medical monitoring as a remedy, and defendants contend that based upon the public policy interests involved in relation to this issue and the weight of authority from other jurisdictions, the Oklahoma Supreme Court would not recognize medical monitoring as a remedy. Initially, this Court would note that there are compelling public policy arguments, as set forth in the parties' briefs and the various cases from other states addressing this matter, on both sides of the issue of recognizing medical monitoring as a remedy. Because whether to recognize medical monitoring as a remedy under Oklahoma law for any plaintiffs other than those who claim to be presently injured does involve such an important public policy determination, this Court finds,

based upon past Oklahoma Supreme Court decisions, that the Oklahoma Supreme Court would decline to recognize medical monitoring as a remedy in the absence of any guidance from the Oklahoma legislature and would instead defer to the Oklahoma legislature to first recognize such a remedy.

In *City of Bethany v. Public Employees Relations Board of the State of Oklahoma*, the Oklahoma Supreme Court stated:

> In the absence of specific guidance in the Oklahoma Constitution, it is the Legislature, and not this Court, which is vested with responsibility for declaring the public policy of this state. When courts make public policy pronouncements, they are worthy of respect only when they are rooted in specific sources of law and not in the policy preferences of the judges who render them.

*City of Bethany v. Pub. Emps. Relations Bd. of the State of Okla.*, 904 P.2d 604, 612 (Okla. 1995). Further, when asked to reconsider the Oklahoma common law rule that a wife could not recover for loss of consortium, the Oklahoma Supreme Court found as follows:

> We feel that we should follow Oklahoma precedent and are of the view that if the present policy in dealing with the problem before us is to be changed it should be done by the legislature, as representatives of the people, and not by this court. The legislature, if it found the law should be changed, could define the extent of liability, designate who maintains the action, provide safeguards against the danger of double recovery, such as a requirement that the wife be joined in the claim of or an action by the husband. The legislature could also provide methods for avoiding multiplicity of suits, rather than trials on a piecemeal basis.

*Karriman v. Orthopedic Clinic*, 488 P.2d 1250, 1251-52 (Okla. 1971). Justice Jackson further elaborated upon this finding in his special concurrence as follows:

> If we expand that statute to give [plaintiff] relief in this case then we have the power to expand it so that all other persons who have suffered a pecuniary loss will have a cause of action. It could be argued that this result is consistent with Art. 2, Sec. 6, Okla.

> Constitution, which provides that there shall be a remedy afforded "for every wrong and for every injury."
>
> Before we move into the legislative field to provide a remedy for every wrong and every injury we should be aware that Art. 5, Sec. 1, Oklahoma Constitution vests the Legislative authority of this State in the Legislature. We should also be aware that Art. 4, Sec. 1, Oklahoma Constitution, tells this court not to exercise powers properly belonging to another department of government.

*Karriman*, 488 P.2d at 1252.

Therefore, due to the complete lack of Oklahoma law, both constitutional, statutory, and case law, on this issue, due to the importance of the public policies at issue, and due to the countless specifics that would need to be addressed if a medical monitoring remedy were recognized, such as how such a remedy would be structured, claim preclusion issues, elements for such a remedy, etc., the Court concludes that the Oklahoma Supreme Court would not recognize a medical monitoring remedy in the absence of any guidance from the Oklahoma legislature and would instead defer to the Oklahoma legislature to first recognize such a remedy.

## III. Conclusion

Accordingly, the Court GRANTS Defendants' Motion for Judgment on the Pleadings as to Plaintiffs' Request for Medical Monitoring Relief [docket no. 65 in Case No. CIV-11-1272-M], HESI's Motion for Judgment on the Pleadings as to Plaintiffs' Request for Medical Monitoring Relief [docket no. 28 in Case No. CIV-11-1305-M], HESI's Motion for Judgment on the Pleadings as to Plaintiffs' Request for Medical Monitoring Relief [docket no. 28 in Case No. CIV-11-1307-M], HESI's Motion for Judgment on the Pleadings as to Plaintiffs' Request for Medical Monitoring Relief [docket no. 31 in Case No. CIV-11-1322-M], Halliburton's Motion for Judgment on the Pleadings as to Plaintiffs' Request for Medical Monitoring Relief [docket no. 29 in Case No. CIV-

11-1323-M], and Halliburton's Motion for Judgment on the Pleadings as to Plaintiffs' Request for Medical Monitoring Relief [docket no. 72 in Case No. CIV-11-1343-M] and FINDS that defendants are entitled to judgment on the pleadings as to plaintiffs' requests for medical monitoring relief for any plaintiffs other than those who claim to be presently injured.

**IT IS SO ORDERED this 10th day of September, 2012.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE