# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEPHEN G. JONES and<br>CYNTHIA L. JONES,<br><br>    Plaintiffs,<br><br>vs.<br><br>HALLIBURTON ENERGY SERVICES,<br>INC., a Delaware corporation,<br><br>    Defendant. | Case No. CIV-11-1322-M |

## ORDER

Before the Court is defendant Halliburton Energy Services, Inc.'s ("Halliburton") Motion to Strike and/or Compel, filed June 24, 2015. On July 16, 2015, plaintiffs filed their response, and on July 23, 2015, Halliburton filed its reply. Additionally, on March 7, 2016, the parties filed supplemental briefs regarding the matters still at issue in Halliburton's Motion to Strike and/or Compel. Based upon the parties' submissions, the Court makes its determination.

There are only two remaining issues this Court need address in relation to Halliburton's Motion to Strike and/or Compel: (1) whether real estate appraisals and tax statements should be produced by plaintiffs, and (2) whether plaintiff Stephen Jones' ("Jones") claim for emotional distress should be stricken, whether the Court should exclude the testimony of Jones' medical health provider, and whether the Court should require Jones to supplement his discovery responses to include, for example, a list of medical providers.

A. <u>Real estate appraisals and tax statements</u>

Through discovery, Halliburton has requested plaintiffs to produce real estate tax statements and real estate appraisals. Plaintiffs state that they have produced documents showing the purchase price of their property and have produced reports and appraisals from their retained appraisal

experts, Jim Artman and Peter Fulmer, to show the value of the respective properties before and after the discovery of the pollution from the Halliburton site. Additionally, plaintiffs state that they have produced any additional appraisals if they were less then ten (10) years old. Plaintiffs assert that under Oklahoma law, the assessed value of land is not competent evidence to show the fair market value of the property and, thus, the real estate tax statements are not discoverable. Plaintiffs further assert that appraisals that are ten or more years old do not constitute relevant evidence of the value immediately before or immediately after the injuries alleged in this case.

Halliburton contends that whether the appraisals or tax statements are admissible is not the appropriate question for purposes of determining whether the documents are discoverable and that the appropriate question is whether the discovery request is reasonably calculated to lead to the discovery of admissible evidence. Halliburton further contends that the information that may be obtained from real estate appraisals and real estate tax statements, even if more than ten years old, is reasonably calculated to lead to the discovery of admissible evidence. Specifically, Halliburton contends that plaintiffs are asserting claims against Halliburton for damage to their property value and that Halliburton's discovery requests for appraisals and real estate tax statements clearly relate to the value of plaintiffs' property. Additionally, Halliburton asserts that in refusing to produce these documents, plaintiffs simply assume that there is no information contained therein that Halliburton might find relevant to its defenses to plaintiffs' claims.

Federal Rule of Civil Procedure 26(b)(1) provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources,

2

> the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Having carefully reviewed the parties' submissions, the Court finds that the real estate tax statements could contain information relevant to plaintiffs' claims and/or Halliburton's defenses in this case. The Court further finds that whether this information would ultimately be admissible, a matter on which this Court is making no determination in this Order, does not alter the discoverability of this information. Thus, the Court finds that Halliburton is entitled to the production of real estate tax statements.

The Court, however, must now determine the time period for which the tax statements and the real estate appraisals should be produced. Under Oklahoma law, "[t]he measure of damages for permanent injuries to land is the difference between the reasonable market value of the land immediately before the injuries and the reasonable market value of the land immediately after the injuries." *Houck v. Hold Oil Corp.*, 867 P.2d 451, 461 (Okla. 1993). In light of the specific time period the measure of damages is based upon, the Court finds that any appraisals or tax statements that are more than ten years old would not be relevant to plaintiff's claims and/or Halliburton's defenses in this case and, thus, would not be discoverable.

Accordingly, the Court finds that plaintiffs should be required to produce to Halliburton any real estate appraisals and real estate tax statements that are not more than ten years old.

B. <u>Emotional distress claim</u>

In this case, Jones is seeking damages for, among other things, alleged personal annoyance, discomfort, anguish, and distress. On February 18, 2015, plaintiffs' counsel identified Dr. Deb

Brantley as a witness who may testify regarding the "medical treatment" of Jones and the alleged "psychological impact" of Halliburton's conduct on Jones. Shortly before Jones' deposition on February 25, 2015, plaintiffs' counsel produced a narrative report from Dr. Brantley regarding her treatment of Jones. During his deposition, Jones testified that he had been seeing Dr. Brantley since May 2014 in relation to stress he claims has been caused by the alleged perchlorate contamination at his property.

Shortly after Jones' deposition, on March 10, 2015, Halliburton requested further information regarding the nature of the claims being brought by Jones and, specifically, whether plaintiffs' counsel planned to offer evidence at trial of Jones' medical/mental condition. Halliburton also requested plaintiffs' counsel to promptly provide a medical authorization for Jones. Plaintiffs' counsel confirmed that he intended to call Dr. Brantley to testify regarding her treatment of Jones and requested that Halliburton provide an editable version of the medical authorization. Halliburton provided an editable form medical authorization for Jones to execute. Plaintiffs' counsel edited the form to limit the authorization to:

> RECORDS RELATING TO EVALUATION, DIAGNOSIS OR TREATMENT FOR PERSONAL ANNOYANCE, INCONVENIENCE, DISCOMFORT, ANGUISH AND DISTRESS DUE TO POLLUTION FROM HALLIBURTON OSAGE ROAD FACILITY – INCLUDING MEDICAL BILLS

Edited Authorization, attached as Exhibit 22 to Defendant Halliburton Energy Services Inc.'s Motion to Strike and/or Compel. Halliburton advised plaintiffs' counsel that it did not agree with his limiting revisions to the medical authorization for Jones and that Halliburton is entitled to discover all of Dr. Brantley's medical records, bills and other documents regarding her treatment of Jones.

4

Halliburton asserts that it has simply requested the records of Dr. Brantley so it can prepare its defense to this claim. Halliburton further asserts that it is entitled to conduct an analysis of the records from Dr. Brantley, without the control and limitations sought by plaintiffs' counsel. Additionally, Halliburton contends that if there are other alternative causes of Jones' depression, anger, hopelessness and anxiety, it is entitled to know that, and, thus, to discovery of any related records.

Based upon Jones' refusal to provide an authorization for the release of the treatment records related to Jones' claim, Halliburton moves the Court to dismiss this claim. Specifically, Halliburton asserts that the failure of Jones to provide an executed medical authorization has hampered Halliburton's ability to conduct discovery on Jones' claim of personal annoyance and distress and has interfered with Halliburton's ability to prepare a defense to that claim. Halliburton also asserts that the refusal to provide the medical authorization has interfered with the judicial process because it has prevented discovery on Jones' claims. In the alternative, Halliburton requests that the Court exclude Dr. Brantley as a witness and further exclude Dr. Brantley's narrative report from evidence in light of the refusal to provide a proper authorization to obtain Dr. Brantley's records related to Jones.

Jones asserts that Dr. Brantley was properly and timely disclosed on plaintiffs' preliminary witness list. Further, Jones asserts that because it was Halliburton who refused to accept the authorization offered by Jones, it was up to Halliburton to act within the framework of the Discovery Code to obtain the information it sought. For example, Halliburton could have filed a timely motion to compel Jones to sign the medical authorization, could have issued a subpoena to Dr. Brantley under Federal Rule of Civil Procedure 45 to obtain the documents it sought, or could have sought

to take Dr. Brantley's deposition. In his supplemental brief, Jones further states that in August of 2015, plaintiffs' counsel requested that Dr. Brantley provide all her records relating to Jones and that the records received from Dr. Brantley included her "progress notes" from her sessions with Jones, along with an account summary and itemization of visits. Jones also states that these records were produced to Halliburton in full, without redaction or deletion. In its supplemental brief, Halliburton states that the treatment notes on their face appear to contain significant redactions.

Having carefully reviewed the parties' submissions, and noting the different procedural posture this case is in now compared to when the initial motion was filed, the Court finds that Jones' emotional distress claim should not be stricken and the testimony of Dr. Brantley should not be excluded. The Court, however, does find that the medical authorization proposed by Jones is too narrow and that Halliburton is entitled to the discovery of all of Jones' medical records relating to the evaluation, diagnosis, and/or treatment for personal annoyance, inconvenience, discomfort, anguish and distress. Specifically, the Court finds that alternative causes of Jones' annoyance, inconvenience, discomfort, anguish and distress are relevant to Halliburton's defense of Jones' emotional distress claim. The Court, therefore, finds that Jones should be required to supplement his discovery responses to include a list of medical providers and to verify that the medical records produced to Halliburton are all of Dr. Brantley's records and that the records have not been redacted. Further, the Court strongly encourages Jones to sign a medical authorization for his records relating to the evaluation, diagnosis, and/or treatment for personal annoyance, inconvenience, discomfort, anguish, and/or distress. If Jones still refuses to sign a medical authorization, the Court finds that Halliburton should promptly seek the discovery of these medical records or the information

contained in these records by other means, such as Rule 45 subpoenas to Jones' medical providers and/or depositions of Jones' medical providers.

C.  Conclusion

Accordingly, for the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Halliburton's Motion to Strike and/or Compel [docket no. 147] as follows:

(1) The Court compels plaintiffs to produce to Halliburton any real estate appraisals and real estate tax statements that are not more than ten years old; said documents should be produced within twenty (20) days of the date of this Order;

(2) The Court denies Halliburton's motion to strike Jones' emotional distress claim;

(3) The Court denies Halliburton's motion to exclude the testimony of Dr. Brantley; and

(4) The Court finds that Halliburton is entitled to the discovery of all of Jones' medical records relating to the evaluation, diagnosis, and/or treatment for personal annoyance, inconvenience, discomfort, anguish and distress. Therefore, Jones is hereby required within twenty (20) days of the date of this Order to supplement his discovery responses to include a list of medical providers and to verify that the medical records produced to Halliburton are all of Dr. Brantley's records and that the records have not been redacted. Further, the Court strongly encourages Jones to sign a medical authorization for his records relating to the evaluation, diagnosis, and/or treatment for personal annoyance, inconvenience, discomfort, anguish, and/or distress. If Jones still refuses to sign a medical authorization, the Court finds that Halliburton should promptly seek the discovery of these medical records or the information contained in these records by other means, such as Rule 45 subpoenas to Jones' medical providers and/or depositions of Jones' medical providers.

**IT IS SO ORDERED this 24th day of March, 2016.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE