# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEPHEN G. JONES and CYNTHIA L. JONES, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>HALLIBURTON ENERGY SERVICES, INC., a Delaware corporation, )<br><br>Defendant. ) | Case No. CIV-11-1322-M |

## ORDER

Before the Court is Halliburton Energy Services, Inc.'s ("Halliburton") Motion for Summary Judgment on Plaintiffs' Injunctive Relief Claim, filed June 10, 2015. On July 8, 2015, plaintiffs filed their response, and on July 15, 2015, Halliburton filed its reply. Based on the parties' submissions, the Court makes its determination.

I.      Introduction

From the mid-1960s until 1991, Halliburton cleaned missile motor casings to remove old or off-specification solid propellant from the missile motor casings for the United States Department of Defense and its contractors on a portion of its Osage Road facility near Duncan, Oklahoma ("Site"). The rocket propellant contained ammonium perchlorate. When dissolved in water, ammonium perchlorate breaks down into its ammonia and perchlorate constituents resulting in water containing perchlorate. During the course of Halliburton's operations, wastewater containing perchlorate seeped into the ground and impacted the groundwater at the Site. Some of the groundwater contaminated with perchlorate migrated off of the Site to residential water wells.

Plaintiffs commenced the above-referenced action seeking compensation and other relief for injuries caused by the perchlorate that has migrated from the Site. Plaintiffs assert a claim for

injunctive relief in this case. Specifically, plaintiffs seek an order "directing and compelling the Defendant to take steps to remediate and remove the pollution from the Plaintiffs' Property and enjoining and prohibiting the Defendant from allowing any future migration of pollution to the Property from the Halliburton Site." First Amended Complaint [docket no. 19] at ¶ 53. Halliburton now moves this Court for summary judgment on plaintiffs' injunctive relief claim.

II.  Discussion

Halliburton asserts that plaintiffs' claim for injunctive relief fails as a matter of law because the Oklahoma Department of Environmental Quality ("ODEQ") maintains primary jurisdiction over any claims for remediation or removal of perchlorate from the groundwater. Halliburton, thus, contends that this Court should abstain from exercising jurisdiction over the injunctive relief claim and enter summary judgment in Halliburton's favor on the injunctive relief claim. Plaintiffs request this Court deny or withhold ruling on Halliburton's motion at this time. Having carefully reviewed the parties' submissions, the Court finds no basis to withhold ruling on Halliburton's motion at this time.

The common law doctrine of primary jurisdiction allows a court to have flexible discretion to refer a matter, which extends beyond the conventional experience of judges, to the specialized competence of an administrative agency which, like the ODEQ in this case, is exercising jurisdiction over the same matter. Courts that have addressed the issue of primary jurisdiction have considered the following factors in making their decision: "(1) whether the court is being called upon to consider factual issues outside the conventional experience of judges; (2) whether defendant could be subject to conflicting orders; (3) whether agency proceedings have already begun; (4) whether the agency has shown diligence in resolving the issue; and (5) the type of relief requested." *B.H.*

*v. Gold Fields Mining Corp.*, 506 F. Supp. 2d 792, 803 (N.D. Okla. 2007). *See also Davies v. Nat'l Coop. Refinery Ass'n*, 963 F. Supp. 990, 997-998 (D. Kan. 1997); *Friends of Santa Fe Cnty. v. LAC Minerals, Inc.*, 892 F. Supp. 1333, 1349-50 (D.N.M. 1995). Having carefully considered the above factors, the Court finds that it should abstain from exercising jurisdiction over plaintiffs' injunctive relief claim.

First, the Court finds that plaintiffs' injunctive relief claim unquestionably raises issues that are outside the conventional experience of judges and that fall within the special expertise of the ODEQ. The primary issues raised by plaintiffs' injunctive relief claim concern the remediation and removal of the contamination. These are all matters within the specialized knowledge of the ODEQ, which is charged by state law with the responsibility for investigating hazardous waste problems in Oklahoma and for protecting human health and the environment. *See* Oklahoma Environmental Quality Act, Okla. Stat. tit. 27A, § 1-1-101 et seq.

Second, the Court finds that there would be a great potential for conflicting orders if this Court were to determine a remediation plan independently of the ODEQ. In fact, plaintiffs' expert, Robert Knox, has criticized the Interim Remedial Measures ("IRMs") recently approved by the ODEQ. Further, it is likely that the ODEQ and this Court would approve of different work plans and/or remediation plans, subjecting Halliburton to conflicting remediation responsibilities and potentially delaying remediation. The Court finds the proper balance of judicial efficiency and administrative expertise in a specialized area such as environmental regulation favors abstention under this factor.

Third, the ODEQ has been actively overseeing the investigation of the Site since 2009, and for off-site properties since 2011. In August 2011, Halliburton and the ODEQ entered into a

Memorandum of Agreement and Consent Order for Site Characterization and Risk Based Remediation ("Consent Order") for the Site pursuant to which Halliburton is required to conduct environmental investigation and characterization activities for perchlorate in the groundwater both on and off the Site and to conduct remediation of the Site and the groundwater under ODEQ supervision. Further, the Consent Order provides that once Site Characterization Reports have been approved by the ODEQ, Halliburton will conduct remediation in accordance with a Remedial Action Work Plan reviewed, commented on and approved by the ODEQ. Finally, the ODEQ's oversight continues to the present time. "It is axiomatic that the advisability of invoking primary jurisdiction is greatest where the issue is already before the agency." *Friends of Santa Fe Cnty.*, 892 F. Supp. at 1350 (quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 532 F.2d 412, 420 (5th Cir. 1976)).

Fourth, while plaintiffs assert that the ODEQ has not been diligent because the ODEQ and Halliburton have not yet developed or proposed a plan to comprehensively address the pollution and there is no timeline for the development of such a plan and no timeline for the closure of the Site, the Court finds nothing that would indicate that the ODEQ has been anything but diligent with respect to its actions once Halliburton notified it in April 2011 of the perchlorate in the groundwater. For example, on January 23, 2015, Halliburton proposed several IRMs, including a proposed pilot test of groundwater extraction and treatment, a biocell pilot test, and an in situ bioreactor pilot test, to ODEQ to reduce perchlorate in the groundwater and submitted Work Plans for implementation of the IRMs. On February 24, 2015, the ODEQ approved Halliburton's Work Plan for its proposed pilot test of groundwater extraction and treatment, and on February 25, 2015, the ODEQ approved

4

Halliburton's Work Plan for three IRMs for remediation of perchlorate in soil and groundwater at the Site.  Thus, the Court finds that the ODEQ has been diligently working to resolve the issue.

Finally, plaintiffs are seeking injunctive relief.  "Primary jurisdiction will often be invoked when a plaintiff seeks injunctive relief, because there is the greatest likelihood that a court's order will interfere with administrative agency's proceedings." *Gold Fields Mining Corp.*, 506 F. Supp. 2d at 805 (internal citations omitted).   The Court, therefore, finds that this factor weighs in favor of abstaining from exercising jurisdiction over plaintiffs' injunctive relief claim.

Accordingly, based upon the above factors, the Court finds that it should abstain from exercising jurisdiction over plaintiffs' injunctive relief claim in order to permit the ODEQ to continue its investigation, supervision, and remediation of the Site without the prospect of conflicting directives from this Court as to how the contamination should be remedied.

III. Conclusion

For the reasons set forth above, the Court GRANTS Halliburton's Motion for Summary Judgment on Plaintiffs' Injunctive Relief Claim [docket no. 145], ABSTAINS from exercising jurisdiction over plaintiffs' injunctive relief claim, and DISMISSES plaintiffs' injunctive relief claim.

**IT IS SO ORDERED this 25th day of March, 2016.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE