# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| AMANDA ALEXANDER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-11-1343-M |
| | ) | |
| HALLIBURTON ENERGY SERVICES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| MITCHELL MCCORMICK, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-11-1272-M |
| | ) | |
| HALLIBURTON ENERGY SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| BRUCE WILMES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-11-1323-M |
| | ) | |
| HALLIBURTON ENERGY SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

| STEPHEN G. JONES and | ) |
| CYNTHIA L. JONES, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. CIV-11-1322-M |
| | ) |
| HALLIBURTON ENERGY SERVICES, | ) |
| INC., a Delaware corporation, | ) |
| | ) |
| Defendant. | ) |

# ORDER

Before the Court is the McCormick plaintiffs' Motion in Limine to Proclude Expert Testimony of Defendant's Witness, William Hathaway, filed June 8, 2015.[1] On July 2, 2015, defendant Halliburton Energy Services, Inc. ("Halliburton") filed its response, and on July 9, 2015, plaintiffs filed their reply. Based upon the parties' submissions, the Court makes its determination.

I.  Introduction

From the mid-1960s until 1991, Halliburton cleaned missile motor casings for the United States Department of Defense and its contractors on a portion of its Osage Road facility near Duncan, Oklahoma ("Site"). Plaintiffs allege that, as a result of those operations, the groundwater at the Site became contaminated with perchlorate, which has since migrated offsite and into the private water wells of numerous area residents. Halliburton retained Mr. Hathaway, an environmental expert, to respond to the opinions proffered by plaintiffs' experts Dr. Richard Laton and Robert Knox.

Pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), plaintiffs move to exclude certain opinions of Mr. Hathaway.

---

[1]The remaining plaintiffs join in the McCormick plaintiffs' motion in limine.

Specifically, plaintiffs seek to exclude the testimony of Mr. Hathaway with respect to: (1) any opinions concerning the health hazard or toxicity of perchlorate, including "safe" concentrations to drink; (2) any opinions concerning whether Halliburton's operations were in compliance with the law and its permits; (3) any opinions concerning "standard" industry practices of operating an unlined, earthen waste water pond; (4) any opinions concerning whether Halliburton was obligated to notify adjoining landowners of the ground water contamination; and (5) any opinions concerning background levels of perchlorate or other sources of perchlorate near the Site.

## II.     Discussion

Federal Rule of Evidence 702 governs the admissibility of expert testimony based upon scientific, technical, or other specialized knowledge. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In undertaking its gatekeeping function, a court must first determine under Rule 702 whether the witness is qualified and whether the opinions expressed fall within his area of expertise. *See Graves v. Mazda Motor Corp.*, 675 F. Supp. 2d 1082, 1092-93 (W.D. Okla. 2009). "'[T]he issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether

those qualifications provide a foundation for a witness to answer a specific question.'" *Id.* (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)).

If the court determines the witness is qualified, it must then determine whether the expert's opinions are reliable. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court held that Rule 702 requires the trial court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999), the Supreme Court concluded that "*Daubert*'s general holding – setting forth the trial judge's general 'gatekeeping' obligation – applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." 526 U.S. at 141. With respect to the all-important reliability determination, the Supreme Court further concluded that "a trial court *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability. But, as the Court stated in *Daubert*, the test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Id.* (emphasis in original).

The "*Daubert* factors" that *may* be considered in assessing the reliability of proposed expert testimony are: (1) whether the theory or technique employed by the expert in formulating his expert opinion can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether, with respect to a particular technique, there is a high known or potential rate of error; (4) whether standards control operation of the technique; and (5) whether the theory or technique is generally accepted within the relevant professional community. *Id.* at 149-50 (quoting *Daubert*, 509 U.S. at 592-94). In *Kumho Tire*, the Court recognized that in some cases

"the relevant reliability concerns may focus upon personal knowledge or experience," rather than scientific foundations. *Id.* at 150. In such cases, the trial court may focus on alternative factors that are better-suited to the specific type of expertise at issue. *Id.* at 150-52. "The objective of [the gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. "[T]he trial judge [has] considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.*

Further, when expert testimony is challenged under *Daubert*, the burden of proof regarding admissibility rests with the party seeking to present the testimony. *Truck Ins. Exch. v. Magnetek, Inc.*, 360 F.3d 1206, 1210 (10th Cir. 2004). "The focus [of the inquiry] . . . must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. "However, an expert's conclusions are not immune from scrutiny: A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (internal quotations and citation omitted). Additionally, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

The Tenth Circuit has explained the appropriate analysis as follows:

> The plaintiff need not prove that the expert is undisputably correct or that the expert's theory is 'generally accepted' in the scientific community. Instead, the plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements.

5

*Truck Ins. Exch.*, 360 F.3d at 1210 (quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)).

  A. <u>Opinions concerning the health hazard or toxicity of perchlorate, including "safe" concentrations to drink</u>

Plaintiffs asserts that Mr. Hathaway should be precluded from offering any opinions concerning the health hazard or toxicity of perchlorate, including "safe" concentrations to drink because he is not qualified by education or experience to give a toxicological opinion concerning safe levels of perchlorate and he provides an inadequate basis or explanation supporting his opinion. Having carefully reviewed Mr. Hathaway's expert report, the Court finds that Mr. Hathaway is not proffering any opinions regarding the health hazard or toxicity of perchlorate but is proffering opinions regarding how the EPA sets safe drinking water standards, that the EPA's goal in setting such standards is to overprotect the public, and that the EPA considers water meeting such standards is safe to drink. The Court finds that Mr. Hathaway is clearly qualified to give such opinions. Mr. Hathaway has over thirty years of experience with the EPA's environmental programs, primarily with EPA's water programs, including serving as Director of Region 6's Water Quality Protection Division and as a Chief of Water Quality Planning and Standards, and has approximately ten years of experience as the president of a rural drinking water supply. Additionally, the Court finds that there is a sufficient basis for Mr. Hathaway's opinions. Finally, the Court finds that many of the objections plaintiffs have to Mr. Hathaway's opinions go to the weight, and not the admissibility, of these opinions and that during cross-examination, plaintiffs may thoroughly question Mr. Hathaway regarding all of the alleged deficiencies in his opinions.

Accordingly, the Court finds that Mr. Hathaway's opinions regarding how the EPA sets safe drinking water standards, that the EPA's goal in setting such standards is to overprotect the public, and that the EPA considers water meeting such standards is safe to drink should not be excluded.

### B. Opinions concerning whether Halliburton's operations were in compliance with the law and its permits

Plaintiffs contend that Mr. Hathaway's opinions regarding whether Halliburton's operations were in compliance with the law and its permits are legal opinions that should be excluded by the Court. Having carefully reviewed the parties' submissions, and particularly Mr. Hathaway's expert report, the Court finds that these opinions do not constitute impermissible legal opinions. Mr. Hathaway does not express opinions as to whether Halliburton's operations were lawful or unlawful; instead, Mr. Hathaway expresses opinions regarding Halliburton's compliance from the EPA's perspective – as the EPA interpreted, implemented, and enforced statutes and regulations. The Court further finds Mr. Hathaway is qualified to offer the above opinions based upon his vast experience with the EPA, as set forth above. Further, the Court finds these opinions will assist the jury to understand the evidence and/or to determine a fact in issue and do not invade the Court's responsibility to instruct on the law. Finally, the Court finds that any objections plaintiffs have to Mr. Hathaway's opinions go to the weight, and not the admissibility, of these opinions and that during cross-examination, plaintiffs may thoroughly question Mr. Hathaway regarding all of the alleged deficiencies in his opinions.

Accordingly, the Court finds that Mr. Hathaway's opinions regarding Halliburton's compliance should not be excluded.

C. Opinions concerning "standard" industry practices of operating an unlined, earthen waste water pond

Plaintiffs assert that Mr. Hathaway's opinions that operation of an unlined waste water pond was consistent with standard industry practice should be excluded because they are conclusory and not supported by data or a detailed rationale. Having carefully reviewed the parties' submissions, and particularly Mr. Hathaway's expert report, the Court finds that based upon his background, knowledge, and experience, Mr. Hathaway is qualified to offer opinions concerning "standard" industry practices of operating an unlined, earthen waste water pond. Additionally, the Court finds that Mr. Hathaway's opinion that unlined ponds were common and industry practice is based on his first-hand observations during his more than forty years of experience in environmental compliance, including thirty years of service for the EPA. The Court, thus, finds that Mr. Hathaway has a sufficient basis for his opinion. Further, the Court finds that many of the objections plaintiffs have to Mr. Hathaway's opinions go to the weight, and not the admissibility, of these opinions and that during cross-examination, plaintiffs may thoroughly question Mr. Hathaway regarding all of the alleged deficiencies in his opinions.

Accordingly, the Court finds that Mr. Hathaway's opinions concerning "standard" industry practices of operating an unlined, earthen waste water pond should not be excluded.

D. Opinions concerning whether Halliburton was obligated to notify adjoining landowners of the ground water contamination

Plaintiffs contend that Mr. Hathaway's opinions concerning whether Halliburton was obligated to notify adjoining landowners of the ground water contamination are legal opinions that should be excluded by the Court. Having carefully reviewed the parties' submissions, and particularly Mr. Hathaway's expert report, the Court finds that Mr. Hathaway's opinions concerning

8

whether Halliburton was obligated to notify adjoining landowners of the ground water contamination do not constitute impermissible legal opinions. Mr. Hathaway does not opine on whether Halliburton had a legal duty to warn the area residents; instead, Mr. Hathaway's opinions relate to the expectations of the EPA, how the EPA handled communications related to potential health risks, and the reasons why the regulatory agencies should be the entities that communicate with the public. The Court finds these opinions will assist the jury to understand the evidence and/or to determine a fact in issue and do not invade the Court's or the jury's responsibilities. Finally, the Court finds that any objections plaintiffs have to Mr. Hathaway's opinions go to the weight, and not the admissibility, of these opinions and that during cross-examination, plaintiffs may thoroughly question Mr. Hathaway regarding all of the alleged deficiencies in his opinions.

Accordingly, the Court finds that Mr. Hathaway's opinions concerning whether Halliburton was obligated to notify adjoining landowners of the ground water contamination should not be excluded.

  E. <u>Opinions concerning background levels of perchlorate or other sources of perchlorate near the Site</u>

Plaintiffs assert that Mr. Hathaway opines that based on his experience of dry farming hay meadows at his ranch, that fertilizer is another source of perchlorate at the Site because he applies a "large amount" of fertilizer on his meadow. Plaintiffs contend that Mr. Hathaway is not qualified to offer this opinion and has not supported this opinion. Having carefully reviewed Mr. Hathaway's expert report, the Court finds that Mr. Hathaway does not express any opinions regarding background levels of perchlorate or other sources of perchlorate near the Site. Mr. Hathaway simply rebuts Dr. Laton's, plaintiffs' expert, opinion regarding the use of fertilizer in dry farming. Specifically, Mr. Hathaway opines:

9

> In an effort to support his theory that there is no significant background perchlorate in the area, Dr. Laton reports that the agricultural area near the Site is classified as "dry farming" and that "Dry farming crops do not require irrigation, large quantities of fertilizer are not used." Based on my own experience dry farming the hay meadow on my ranch, I apply 600 to 800 pounds of fertilizer per acre annually, per the Soil Conservation agent recommendations in my area. I live not that terribly far from Duncan. I consider this to be a large amount of fertilizer.

Report of William B. Hathaway at (D)11, p. 17. Based upon his personal experience with dry farming, the Court finds Mr. Hathaway is qualified to give this narrow opinion and that this opinion is properly supported. Accordingly, the Court finds that Mr. Hathaway's opinions regarding the use of fertilizer in dry farming should not be excluded.

### III. Conclusion

The Court, therefore, DENIES the McCormick plaintiffs' Motion in Limine to Proclude Expert Testimony of Defendant's Witness, William Hathaway [docket no. 275 in case no. CIV-11-1272-M].

**IT IS SO ORDERED this 20th day of May, 2016.**

*/s/ Vicki Miles-LaGrange*
VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE